## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CERTAIN UNDERWRITERS OF LLOYD'S,
LONDON SUBSCRIBING TO POLICY NUMBER
B080111789A08,

      Plaintiff,

v.                                                    Civ. No. 13-701 KG/KK

OLD REPUBLIC INSURANCE COMPANY *et al.*,

      Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART
### DEFENDANTS' RENEWED MOTION TO COMPEL

THIS MATTER comes before the Court on Defendants' Renewed Motion to Compel Discovery Responses Regarding Investigation and Claims File (Doc. 46)[1], filed January 9, 2015. The Court, having reviewed the submissions of the parties and the relevant law, and being otherwise fully advised, FINDS that Defendants' motion is well taken in part and should be GRANTED IN PART and DENIED IN PART, as follows.

### *Background*

This is the fourth federal lawsuit regarding the same dispute between the parties. All of the cases arise, directly or indirectly, out of hail damage to two airplanes in July 2008. (Civ. No. 12-1156 KG/GBW, Doc. 35 at 2.)  Defendants Old Republic Insurance Company ("Old Republic") and Phoenix Aviation Managers, Inc. ("Phoenix") jointly insured the planes,[2] and Eclipse Aviation Corporation ("Eclipse") had custody of them, when they were damaged.  (*Id.*)  Old Republic paid approximately $420,000 to repair the planes, and then sought subrogation

---

[1] References to "Doc." are to the Court's docket in Civ. No. 13-701 KG/KK unless otherwise indicated.

[2] In all of the lawsuits discussed herein, Old Republic and Phoenix have functioned as a single entity.  Thus, this Order will refer to them collectively as "Old Republic."

from Eclipse, claiming that the planes were damaged due to Eclipse's negligence.  (*Id.*)  Eclipse

filed for bankruptcy in November 2008.  (*Id.*)  Plaintiff Certain Underwriters of Lloyd's, London

("Underwriters") was Eclipse's insurer, (Doc. 1 at 1), and hired the Rose Walker law firm ("Rose

Walker") to represent Eclipse regarding the damaged planes.  (Civ. No. 12-1156 KG/GBW, Doc.

35 at 2.)  Rose Walker notified Old Republic of this representation in March 2009.  (*Id.*)  Eclipse

was liquidated in August 2009.  (*Id.*)

      In May 2010, Old Republic filed a subrogation suit against Eclipse in state court.  (D-

202-CV-2010-05837.)  Old Republic served its complaint on the New Mexico Secretary of State,

and did not notify Rose Walker of the suit.  (Civ. No. 12-1156 KG/GBW, Doc. 35 at 2.)  Eclipse,

being defunct, did not answer the complaint, and the state court entered a default judgment

against it in January 2011.  (*Id.*)  In March 2011, Old Republic contacted Rose Walker to attempt

to collect on the default judgment.  (*Id.*)

      Underwriters filed the first federal lawsuit in May 2011, seeking a declaratory judgment

that the default judgment Old Republic had obtained against Eclipse in state court could not be

enforced against it.  (Civ. No. 11-432 KBM/ACT, Doc. 1.)  In June 2012, Chief United States

Magistrate Judge Molzen granted summary judgment to Underwriters, holding that Underwriters

did not receive notice or an opportunity to be heard on the default judgment, and had no duty to

satisfy it.  (*Id.*, Doc. 59 at 14.)  Meanwhile, in January 2012, Old Republic had obtained a writ of

garnishment on the default judgment in state court.  (Civ. No. 12-1156 KG/GBW, Doc. 35 at 3.)

Underwriters removed the garnishment proceedings to federal court in March 2012, thus

beginning the second federal lawsuit.  (Civ. No. 12-323 RB/RHS.)  United States District Judge

Brack granted summary judgment to Underwriters in that case in September 2012, based on

Judge Molzen's ruling in Civ. No. 11-432 KBM/ACT.  (*Id.*, Doc. 33.)

Old Republic sought to have the now-unenforceable default judgment in D-202-CV-2010-05837 set aside in July 2012, at which it succeeded in February 2013 despite Underwriters' opposition.  (D-202-CV-2010-05837, Feb. 22, 2013.)  Also in July 2012, Old Republic filed negligence and Unfair Practices Act claims against Eclipse in state court.  (Civ. No. 12-1156 KG/GBW, Doc. 35 at 3.)  Underwriters removed that case to federal court in November 2012, beginning the third federal lawsuit.  (*Id.*, Doc. 1.)

On July 31, 2013, Underwriters filed this, the fourth federal lawsuit, seeking a declaratory judgment that it has no duty to defend or indemnify Eclipse for any claims arising out of the two damaged planes.  (Doc. 1.)  In January 2014, United States District Judge Gonzales stayed proceedings in Civ. No. 12-1156 KG/GBW pending resolution of this action.  (Civ. No. 12-1156 KG/GBW, Doc. 36.)  As of the date of entry of this Order, both Civ. No. 12-1156 KG/GBW and D-202-CV-2010-05837 are still pending.[3]

United States Magistrate Judge Torgerson held a Rule 16 initial scheduling conference in this case on October 29, 2013.  (Doc. 22.)  After consulting with the parties' counsel, however, Judge Torgerson continued the conference "until after [Defendants' Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim upon which Relief can be Granted (Doc. 9), filed August 23, 2013, and Plaintiff's Motion for Summary Judgment and Memorandum in Support (Doc. 23), filed October 29, 2013] have been ruled on."  (*Id.*)  Both parties' dispositive motions remain pending at this time.  Old Republic nevertheless served discovery on Underwriters on November 27, 2013 (Doc. 27), to which Underwriters objected and responded

---

[3] The Second Judicial District Court in D-202-CV-2010-05837 closed that case for lack of prosecution on September 9, 2014, but reopened it on Old Republic's motion on September 18, 2014.  (D-202-CV-2010-05837, Sept. 9, 2014 & Sept. 18, 2014.)

on January 17, 2014.  (Doc. 32.)  Old Republic filed a motion to compel regarding Underwriters'
objections and responses on February 5, 2014.  (Doc. 34.)

United States Magistrate Judge Martínez, to whom the case was reassigned in January
2014, denied Old Republic's motion to compel without prejudice on April 21, 2014 for three
reasons.  (Doc. 40.)  First, she determined that the parties' dispositive motions "may resolve
some or all o[f] the issues raised in Old Republic's motion to compel."  (*Id.* at 3.)  Second, she
held that "[i]t would…be inappropriate for the undersigned to make a determination on whether
Old Republic is entitled to discovery at this point when a similar claim," *i.e.*, Old Republic's
argument that it cannot fully respond to Underwriters' summary judgment motion without
discovery, "is currently before the presiding judge."  (*Id.*)  Third, she relied on Judge Gonzales'
stay of Civ. No. 12-1156 KG/GBW to find that Underwriters "could be irreparably harmed if
they continue to expend resources to defend Eclipse only for the Court to subsequently determine
that they had no duty to defend or indemnify Eclipse."  (*Id.*  at 4.)  She further held that Old
Republic could "re-file the motion to compel if it is still necessary after the motion for summary
judgment is resolved."  (*Id.*)

Thereafter, this case remained at a standstill for several months.  Then, on December 15,
2014, Old Republic moved for a status conference to discuss resuming discovery, although the
parties' dispositive motions remain pending.  (Doc. 42.)  This Court held a status conference on
December 22, 2014, at which it ordered the parties to determine whether Underwriters had, as its
counsel believed, produced its "investigative file" to Old Republic.  (Doc. 45.)  The Court gave
Old Republic leave to file a renewed motion to compel if the parties could not reach an
agreement on this point.  (*Id.*)  The parties were not, in fact, able to reach an agreement, and Old
Republic therefore filed its renewed motion to compel on January 9, 2015.  (Doc. 46.)  After

4

reviewing the parties' briefing on the renewed motion, the Court held another status conference on June 5, 2015, at which it ordered Underwriters to produce "a privilege log of any documents it is withholding on the basis of the attorney-client privilege or the attorney work-product doctrine," which Underwriters had previously failed to do.  (Doc. 56.)  Underwriters produced an undated, one-page privilege log to Old Republic on or before June 26, 2015, (Docs. 60, 61), and Old Republic's renewed motion to compel is now ripe for decision.

## *Analysis*

The Court will first address the fact that Judge Martínez denied Old Republic's original motion to compel without prejudice, and indicated that Old Republic should renew it only after the presiding judge has resolved the parties' pending dispositive motions.[4]  (Doc. 40.)  When Judge Martínez so ruled in April 2014, she likely did not anticipate that the issues Old Republic raised in its motion to compel would remain unresolved well over a year later.  The unexpectedly indefinite nature of this delay constitutes a significantly changed circumstance that impels this Court to revisit Judge Martínez's decision.  *See King* v. *Cessna Aircraft Co.,* 505 F.3d 1160, 1172 (11th Cir. 2007) (stays resulting in "protracted and indefinite period of delay" are impermissible).

Having considered the current circumstances and the bases for Judge Martínez's decision, the Court finds it necessary and appropriate to address the substance of Old Republic's renewed motion to compel at this time.  This case has been pending for two years.  Old Republic served its discovery, and filed its original motion to compel, about one-and-a-half years ago.  Moreover, the incident underlying this case—the hail damage to the two planes in Eclipse's custody— occurred seven years ago, and Eclipse was liquidated in bankruptcy almost six years ago.

---

[4] Old Republic has repeatedly argued that the Court should not revisit Judge Martínez's decision until the parties' dispositive motions have been resolved.  (*See, e.g.*, Doc. 51 at 2; Doc. 57 *passim*; Doc. 63 at 5.)

Lengthy delays of all kinds and by all parties have proliferated in this case and its kin. It is virtually certain that witnesses have dispersed, memories have faded, and relevant documents have become more difficult or impossible to locate. In these circumstances, it would be unfairly prejudicial to require Old Republic to wait any longer to be heard regarding whether Underwriters has improperly failed to respond to Old Republic's discovery requests.[5]

The Court need not invade the province of the presiding judge in ruling on Old Republic's discovery motion, even though Old Republic has asserted that it requires additional discovery to counter Underwriters' motion for summary judgment. Whether the information Old Republic seeks is discoverable under Federal Rule of Civil Procedure 26 – the issue Old Republic raises in its renewed motion to compel – is distinct from whether Old Republic can adequately respond to Underwriters' summary judgment motion without the benefit of discovery under Federal Rule of Civil Procedure 56 – the issue Old Republic raises in its summary judgment response. The Court need decide only the former issue in this Order. If anything, this Court's resolution of the parties' discovery disputes will allow the presiding judge to make a more fully informed decision on Underwriters' dispositive motion.

Also, the stay of Civ. No. 12-1156 KG/GBW does not automatically mandate a *de facto* stay of discovery in this case as well. If any party believes that there are sufficient grounds to support a stay of discovery in this case, that party should file an appropriate motion. In the absence of such a motion—and a ruling granting it—discovery should proceed. *See Clinton v.*

---

[5] Underwriters suggests that the Court should disregard the undeniable prejudice that continued discovery delays would cause Old Republic, because Old Republic itself previously caused delay when it obtained and defended a default judgment against Eclipse without notice to Eclipse's counsel. (Doc. 63 at 11-12.) This alleged conduct is, of course, the same conduct on which Underwriters bases its substantive claims. (Doc. 1.) However improper Old Republic's conduct might have been, and whatever its ultimate consequences—which, according to Underwriters, should include barring Old Republic from receiving any subrogation—the Court does not find it to be a proper basis on which to indefinitely delay discovery. On the contrary, discovery may help the Court to fairly determine the appropriate legal and equitable consequences, if any, of Old Republic's alleged conduct.

*Jones*, 520 U.S. 681, 708 (1997) (party seeking stay of discovery bears burden of establishing need for it).  Indeed, in the Court's view, prompt discovery in this case is needed precisely to determine whether Civ. No. 12-1156 KG/GBW should be allowed to go forward.  Civ. No. 12-1156 KG/GBW is stayed "pending resolution" of this case, (Civ. No. 12-1156 KG/GBW, Doc. 35 at 9); and, unless the Court grants one of the parties' dispositive motions, this case cannot be resolved until discovery is completed.

Finally, it is correct that resolution of the parties' dispositive motions may eliminate some or all of the parties' claims, and thereby moot all or part of Old Republic's renewed motion to compel.  This is a truism that applies in every case in which discovery motions are filed while dispositive motions are pending.  Nevertheless, in the absence of a discovery stay, parties are entitled to take discovery while waiting for dispositive motions to be resolved, particularly where discovery may be needed to enable a party to respond to a dispositive motion.  *Wolf v. United States*, 157 F.R.D. 494, 495 (D. Kan. 1994) ("A court abuses its discretion when it stays discovery and prevents a party from having a sufficient opportunity to develop a factual basis for defending against [a dispositive] motion."); *see also Danny B. v. Raimondo*, 784 F.3d 825, 835 (1st Cir. 2015) ("[A] district court may not impose discovery restrictions that preclude a suitor from the legitimate pursuit of evidence supporting her cause of action.").  For all of these reasons, the Court will decide Old Republic's renewed motion to compel on its merits, notwithstanding Judge Martínez's denial of Old Republic's original motion to compel without prejudice and the continued pendency of the parties' dispositive motions.

1. ***Old Republic's Interrogatory No. 1***:  In this interrogatory, Old Republic seeks the names of the persons who responded to Old Republic's discovery requests on Underwriters' behalf.  (Doc. 46-1 at 1.)  Underwriters objected that the interrogatory is improper because it is

7

not a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6), and did not answer it. (*Id.*)  In its response to Old Republic's renewed motion to compel, Underwriters suggested, but did not clearly state, that its answer to Old Republic's Interrogatory No. 4, along with the verification of its interrogatory answers, fully answered this interrogatory.  (Doc. 51 at 5.)  The Court finds that Underwriters' objection is unwarranted, and that its answer is indirect, and possibly incomplete.  Because Old Republic is entitled to a direct, complete, sworn answer, the Court will compel Underwriters to fully respond to Interrogatory No. 1. *See* Fed. R. Civ. P. 33(b)(3) (interrogatories must be answered "separately and fully in writing under oath").

2.     ***Old Republic's Interrogatory No. 4***:  In its fourth interrogatory, Old Republic seeks the names of all persons with knowledge of the damage to the two planes at issue, and whether Underwriters intends to call such persons as witnesses at trial.  (Doc. 46-1 at 2-3.) Underwriters responded with the names of two claims managers, an adjustor, and an attorney of record in this case.   (*Id.*)   Underwriters also objected that the interrogatory is overbroad, premature, and seeks information that would reveal attorney work product and trial strategy, and, based on these objections, appears to have omitted the names of any fact witnesses it discovered by investigating the two damaged planes, as well as the names of the persons it may call as trial witnesses.  (*Id.*)

The Court finds that Underwriters' objections to this interrogatory are without merit, and will grant Old Republic's renewed motion to compel Underwriters to answer it completely, to include the names of all fact witnesses it discovered as a result of any investigation it conducted into the two damaged planes.   The interrogatory is sufficiently specific in its scope and reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Further, Underwriters is mistaken in claiming that it seeks the revelation of attorney work

product and trial strategy.   The work-product doctrine "does not protect facts concerning the creation of work product or facts contained within work product," *Sanchez v. Matta*, 229 F.R.D. 649, 655 (D.N.M. 2004), including the identity of potential witnesses.   In fact, Rule 26 requires Underwriters to disclose the identity of the persons whom it may call to testify at trial or otherwise use to support its claims and defenses, even in the absence of an interrogatory seeking such information.   Fed. R. Civ. P. 26(a)(1)(A)(i).

      **3.**   ***Old Republic's Interrogatory No. 6 and Request for Production No. 3***:   In these requests, Old Republic seeks information about insurance claims unrelated to this litigation, for damage to other property stored at Eclipse's facility, that Underwriters paid during the relevant coverage period.   (Doc. 46-1 at 4, 11.)   Underwriters objected that both of these discovery requests seek irrelevant information, and also that the request for production is overbroad and unduly burdensome.   (*Id.*)   In its renewed motion to compel, Old Republic argues that the requested information is relevant to show that Underwriters acted in bad faith by handling other claims differently than it did Old Republic's claim.   (Doc. 46 at 8; Doc. 52 at 4.)   Old Republic does not, however, assert that it has any articulable reason to believe that Underwriters handled Old Republic's claim differently from other, similarly situated claims.   (*See generally id.*)

      The Court finds that the undue burden producing this information would impose on Underwriters outweighs any speculative relevance it might have, Fed. R. Civ. P. 26(b)(2)(C)(iii); *Sieveking v. Reliastar Life Ins. Co.*, 257 F.R.D. 173, 175-76 (S.D. Ind. 2009), with the following exception.   Underwriters claims that the breach of the insurance policy it issued to Eclipse[6] has relieved it of the duty to defend and indemnify Eclipse in Civ. No. 12-1156 KG/GBW and/or D-

---

[6] Underwriters claims that Eclipse, due to its liquidation in bankruptcy, breached the clauses in the insurance policy that required Eclipse to cooperate with Underwriters in defense of litigation.   (Doc. 1 at 6.)   As a strictly factual matter, this appears incontrovertible, because Eclipse is defunct and as such can no longer cooperate in the defense of any litigation against it.

202-CV-2010-05837, because the breach caused it "substantial prejudice." (Doc. 1 at 6; Doc. 23 at 15-18); *see, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Fennema*, 2005-NMSC-010, ¶ 7, 110 P.3d 491, 493 (insurer "must demonstrate substantial prejudice as a result of a material breach of the insurance policy by the insured before it will be relieved of its obligations under a policy"); *Roberts Oil Co. v. Transamerica Ins. Co.*, 833 P.2d 222, 227 (N.M. 1992) (same). The factual basis of Underwriters' claim of substantial prejudice is that, because Eclipse no longer exists to cooperate in its defense, Underwriters has insufficient information and guidance to enable it to defend Eclipse in the two pending lawsuits. (Doc. 1 at 6; Doc. 23 at 2, 11, 15-18.) While a presumption of prejudice does arise from an insured's breach of an insurance policy, that presumption is rebuttable "by producing evidence that the insurer was not in fact prejudiced." *Roberts Oil Co.*, 833 P.2d at 231. Thus, in the present matter, Old Republic is entitled to try to show that Eclipse's breach did not cause Underwriters substantial prejudice, *inter alia*, by showing that Underwriters has sufficient factual information and guidance to enable it to defend Eclipse in Civ. No. 12-1156 KG/GBW and/or D-202-CV-2010-05837, despite the fact that Eclipse no longer exists to cooperate in the defense.

If Underwriters paid any other claims involving property damaged at Eclipse's facility during the same hailstorm that damaged the two planes at issue here, then it likely gathered information in handling those claims that would assist it in defending Eclipse in Civ. No. 12-1156 KG/GBW and/or D-202-CV-2010-05837. Thus, information on this limited point is reasonably calculated to lead to the discovery of admissible evidence regarding whether Eclipse's liquidation in bankruptcy substantially prejudiced Underwriters' ability to defend Eclipse. The Court will therefore compel Underwriters to respond to Old Republic's Interrogatory No. 6 and Request for Production No. 3, but only with responsive information and

documents in its possession, custody, or control concerning claims involving property damaged at Eclipse's facility during the July 2008 hailstorm that damaged the two planes at issue here.[7]

> **4.** **_Old Republic's Interrogatory No. 8 and Requests for Production Nos. 5 and 12_**:

In these requests, Old Republic seeks information describing, and documents generated as a result of, "any investigation" that Underwriters, its attorneys, or Eclipse's attorneys conducted regarding the two damaged planes at issue.  (Doc. 46-1 at 5, 11-12, 14-15.)  Underwriters objected that the requests are overbroad, overburdensome, and seek information that is irrelevant and protected by the attorney-client privilege and work product doctrine.[8]  (_Id._)  As previously noted, this Court subsequently ordered Underwriters to "produce a privilege log of any documents it is withholding on the basis of the attorney-client privilege or the attorney work-product doctrine."  (Doc. 56.)  The resulting privilege log consists of a single page and lists two items.  (Doc. 61.)  The first item is a November 28, 2008 electronic mail message from Bill Isakson (a claims manager) to Bill Vessey (an adjustor), which discusses "claim related issues in regards to multiple losses during the hail storm," and has a "claims report" attached to it.  (_Id._; _see_ Doc. 46-1 at 3.)  Underwriters asserts that this item is "[a]nticipation of [l]itigation work product."  (Doc. 61.)  The second item is the "Rose Walker litigation file for all related cases including attorney strategy, investigation, and communications with Underwriters," from January

---

[7] If Underwriters believes that a protective order is necessary to preserve the privacy of claimants not involved in this action, the Court notes that Local Rule 7.1 obligates Underwriters to make a good-faith request for Old Republic's concurrence before filing an appropriate motion with the Court.  D.N.M. LR-Civ. 7.1(a).

[8] For the first time in its response to Old Republic's original motion to compel, Underwriters also argued that communications between itself and Eclipse are privileged.  (Doc. 36 at 13.)  To the extent that Underwriters sought to object to these requests on the basis of an insurer-insured privilege, Underwriters failed to cite to any legal authority supporting the objection, and has waived it by failing to make it in a timely fashion.  Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection [to an interrogatory] is waived unless the court, for good cause, excuses the failure."); _Starlight Int'l v. Herlihy_, 181 F.R.D. 494, 496 (D. Kan. 1998) (applying Rule 33(b)(4) to requests for production).

2009 to the present.  (*Id.*)  Underwriters claims that the "[a]ttorney client privilege and core work product privilege" protect this item.  (*Id.*)

In a supplemental brief, Underwriters referred to the log's first item as UNDERWRITERS000329, and asserted that it is the only document in Underwriters' claims file that has not been produced.  (Doc. 63 at 8.)  The Court will address this item in Section 7, *infra*, in the context of Old Republic's Request for Production No. 14, which specifically seeks Underwriters' claims file and is thus most directly pertinent to it.  (Doc. 46-1 at 15.)  The Court will grant in part and deny in part Old Republic's renewed motion to compel Underwriters to respond to Interrogatory No. 8 and Requests for Production Nos. 5 and 12 as to the second item in Underwriters' privilege log, *i.e.*, Rose Walker's litigation file.  The Court finds that the requested information is relevant based on the law and analysis set forth in Section 3, *supra*.  The Court will therefore overrule Underwriters' objection on this basis.  The more difficult issue is whether and to what degree the attorney-client privilege and/or the attorney work-product doctrine protect responsive, withheld documents in the Rose Walker litigation file.

In diversity cases such as this, state law governs the scope of the attorney-client privilege and whether it has been waived.  *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 649 (D.N.M. 2007) ("*Anaya II*").  "Under New Mexico law, the attorney-client privilege applies to confidential communications made for the purpose of facilitating the rendition of professional legal services to the client."  *Id.* at 650.  The client holds the privilege.  *S.F. Pac. Gold Corp. v. United Nuclear Corp.*, 2007-NMCA-133, ¶ 36, 175 P.3d 309, 321 (citing N.M. R. Evid. 11-503(B)).  New Mexico also recognizes the "common interest rule," which

> protects the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.

12

*Id.* at ¶ 16, 175 P.3d at 316.  "The common interest rule does not require that actual litigation be in progress; rather, the rule applies whenever more than one client share a common interest about a legal matter."  *Id.* at ¶ 18, 175 P.3d at 316.  Pursuant to the common interest rule, either party involved in a joint litigation strategy may assert the attorney-client privilege as to communications regarding the shared legal matter.  *See id.* at ¶ 36, 175 P.3d at 321.  However, a fully defunct corporation, unlike a natural person, "retains no [attorney-client] privilege."[9] *S.E.C. v. Carrillo Huettel L.L.P.*, 2015 WL 1610282, at *2 (S.D.N.Y. 2015) (citing cases); *Official Comm. of Admin. Claimants v. Moran*, 802 F. Supp. 2d 947, 948-49 (N.D. Ill. 2011); *City of Rialto v. U.S. Dep't of Defense*, 492 F. Supp. 2d 1193, 1197 (C.D. Cal. 2007).

"The party asserting the attorney-client privilege bears the burden of demonstrating that it applies and that it has not been waived."  *Anaya II*, 251 F.R.D. at 650.  Waiver of the attorney-client privilege occurs, *inter alia*, when a party directly relies on an attorney-client communication to advance a claim or defense.  *See, e.g.*, *Gingrich v. Sandia Corp.*, 2007-NMCA-101, ¶¶ 14-15, 165 P.3d 1135, 1140 (citing *Pub. Serv. Co. of N.M. v. Lyons*, 2000-NMCA-077, 10 P.3d 166)).  In New Mexico, this type of waiver, known as "at issue" waiver, requires the client to make "offensive or direct use of privileged materials."  *S.F. Pac. Gold Corp.* 2007-NMCA-133, ¶ 31, 175 P.3d at 320 (citing *Lyons*, 2000-NMCA-077, ¶ 23, 10 P.3d at 166).

---

[9] Although no New Mexico court appears to have addressed whether a fully defunct corporation retains the attorney-client privilege, this Court predicts that the New Mexico Supreme Court would follow the great weight of the well-reasoned authority on this point.  *See Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007) (Applying state law in diversity cases, "[w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do.").

New Mexico law does not recognize "at issue" waiver when a party has merely placed its state of mind at issue in the litigation. *Gingrich*, 2007-NMCA-101, ¶ 19, 165 P.3d at 1141. Likewise, "at issue" waiver does not apply merely because attorney-client communications are relevant or even critical to an evaluation of the party's claims. *Id.* "Relevance is not the standard for determining whether . . . evidence should be protected from disclosure as privileged." *Lyons*, 2000-NMCA-077, ¶ 21, 10 P.3d at 173 (quoting *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994)). New Mexico courts have found this narrow approach to "at issue" waiver "to be most consistent with the purpose underlying the privilege, which is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Gingrich*, 2007-NMCA-101, ¶ 15, 165 P.3d at 1140.

"At issue" waiver in New Mexico is thus restrictive, but not non-existent. For example, the New Mexico Court of Appeals in *Gingrich* found that the defendant waived the attorney-client privilege as to an investigative report that its attorney had prepared. *Id.* at ¶¶ 12-14, 165 P.3d at 1139-40. The *Gingrich* court concluded that the defendant had

> made direct use of the [r]eport in this litigation in defending against [the p]laintiff's claim that [the defendant] violated the terms of an implied employment contract by demoting her without cause. This constitutes waiver under the rule articulated in *Lyons*.

*Id.* at ¶ 14, 165 P.3d at 1140. Moreover, the *Gingrich* court found the scope of the waiver to include not only the report, but also "all communications" regarding the report between the defendant, the attorney who prepared the report, and the defendant's in-house counsel. *Id.* at ¶ 25, 165 P.3d at 1142.

14

Turning to the attorney work-product doctrine, the Federal Rules of Civil Procedure govern this protection even in diversity cases. *Anaya II*, 251 F.R.D. at 650. Federal Rule of Civil Procedure 26(b)(3) identifies two types of work product.

> Ordinary work product generally refers to materials that are gathered at the request of an attorney in anticipation of litigation. This type of work product receives less protection than opinion work product. Opinion work product is, basically, the mental impressions of the attorney.

*Sinclair Oil Corp. v. Texaco, Inc.*, 208 F.R.D. 329, 334 (N.D. Okla. 2002). A party may discover ordinary work product if it "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A); *Sanchez*, 229 F.R.D. at 654. Opinion work product, in contrast, is generally immune from disclosure. Fed. R. Civ. P. 26(b)(3)(B). As with the attorney-client privilege, "offensive use" of attorney work product waives the protection; and, "[t]he party asserting the work-product protection has the burden of demonstrating that it applies and that it has not been waived." *Anaya v. CBS Broad., Inc.*, 2007 WL 2219394, at *6 (D.N.M. 2007) ("*Anaya I*"); *Anaya II*, 251 F.R.D. at 651. Unlike the attorney-client privilege, however, both the attorney and the client hold the work-product protection and either may assert it. *Murphy v. Gorman*, 271 F.R.D. 296, 311 (D.N.M. 2010).

A blanket assertion does not satisfy the burden of the party asserting the protections of either the attorney-client privilege or the work-product doctrine. *Burke v. Glanz*, 2013 WL 3994634, at *1 (N.D. Okla. 2013); *Kannaday v. Ball*, 292 F.R.D. 640, 645 (D. Kan. 2013); *Anaya II*, 251 F.R.D. at 651; *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000).

> When a party withholds information otherwise discoverable under these rules by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not

15

> produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A). "This detailed and specific showing . . . is typically presented in the form of a privilege log." *Kannaday*, 292 F.R.D. at 645. "The law is well-settled that failure to produce a privilege log or production of an inadequate privilege log may be deemed waiver of the privilege." *Anaya II*, 251 F.R.D. at 651.

As a preliminary matter, the Court notes that Underwriters disregarded Rule 26(b)(5)(A) when it failed to produce a privilege log of documents responsive to Old Republic's discovery requests that it withheld on a claim of privilege when it first responded to these requests in January 2014. On this basis, Underwriters could have been deemed to have waived any protections applicable to the withheld documents. *Kannaday*, 292 F.R.D. at 646; *Anaya II*, 251 F.R.D. at 651. However, the Court in its discretion gave Underwriters a second opportunity to produce a privilege log, (Doc. 56); *S.F. Pac. Gold Corp.* 2007-NMCA-133, ¶ 28, 175 P.3d at 319, in light of the important interests the attorney-client privilege and work-product doctrine are designed to protect. *Gingrich*, 2007-NMCA-101, ¶ 15, 165 P.3d at 1140. As noted above, Underwriters availed itself of the opportunity, and included in its log the Rose Walker litigation file now under consideration.

The Court will first consider Underwriters' assertion that the attorney-client privilege protects the litigation file. Underwriters and Old Republic appear to agree that Underwriters, as Rose Walker's client in this and other related cases, holds the privilege as to the withheld documents, either in its own right or through its former co-client Eclipse pursuant to the common interest rule, and may therefore waive it. (*See* Doc. 51 at 8, 12, 14; Doc. 60 at 3); *S.F. Pac. Gold Corp.* 2007-NMCA-133, ¶¶ 16-18, 175 P.3d at 316. Moreover, the Court predicts that the New

16

Mexico Supreme Court would hold that Eclipse, as a wholly defunct corporation, no longer holds the privilege and therefore need not join in any waiver of it, to the extent that may otherwise have been necessary. *Carrillo Huettel L.L.P.*, 2015 WL 1610282, at *2; *Moran*, 802 F. Supp. 2d at 948-49; *City of Rialto*, 492 F. Supp. 2d at 1197.

Underwriters claims that the attorney-client privilege protects the entire "Rose Walker litigation file for all related cases including attorney strategy, investigation, and communications with Underwriters," from January 2009 to the present. (Doc. 61.) This is a blanket claim of privilege, covering an unknown and likely large number of documents, of many different types, authored and reviewed by an unknown number of unidentified persons, spanning over six years, and does not permit the Court or an opposing party to assess the claim of privilege as to any particular document or category of documents. Fed. R. Civ. P. 26(b)(5)(A); *see Kannaday*, 292 F.R.D. at 645 (describing the usual contents of an adequate privilege log). Underwriters' production of an inadequate privilege log could allow the Court to find that the attorney-client privilege has been waived as to the entire litigation file. *Anaya II*, 251 F.R.D. at 651.

However, the Court must also consider Underwriters' argument, in its response to Old Republic's original motion to compel, that it was unable to produce a privilege log at all due to the overbroad and overburdensome nature of Old Republic's discovery requests. (Doc. 51 at 14.) While this argument is inaccurate on its face—Underwriters was in fact able to produce a log when directly ordered to do so—the very broad and burdensome nature of Old Republic's requests no doubt contributed to the log's inadequacy. The breadth of Underwriters' allegations in turn may explain the scope of Old Republic's requests. Nevertheless, in light of Underwriters' valid objections on this point, the Court will excuse Underwriters' production of an inadequate privilege log, and narrow the scope of the responsive, withheld documents Underwriters will be

17

required to include in a supplemental privilege log to those the Court deems likely to be discoverable. The Court will require Underwriters to produce this supplemental log to the Court as well as Old Republic, and will itemize the specific information Underwriters must include in it. The Court will then use this log to determine what documents, if any, it will order Underwriters to produce either to Old Republic or to the Court for *in camera* review. This will simultaneously reduce the burden on Underwriters, and provide the Court with the information it needs to assess whether the attorney-client privilege applies and has not been waived as to each document included in the supplemental log.

In delineating categories of withheld, responsive documents that are likely to be discoverable, the Court must consider whether and to what extent Underwriters may have waived the attorney-client privilege by making direct and offensive use of documents in the Rose Walker litigation file. *Gingrich*, 2007-NMCA-101, ¶¶ 12-20, 165 P.3d at 1139-41. As noted in Section 3, Underwriters claims that, because Eclipse no longer exists to cooperate in its defense, Underwriters has insufficient guidance and factual information to defend the two pending lawsuits against Eclipse. (Doc. 1 at 6; Doc. 23 at 2, 11, 15-18.) To support this claim, Underwriters affirmatively alleges in its motion for summary judgment that Eclipse has provided Underwriters with no assistance in its defense, and has no employees, evidence, or knowledge to provide any assistance. (*See, e.g.*, Doc. 23 at 11, 15-18; *see id.* at 16 (Eclipse "*has not* and cannot provide [sic] Plaintiff with assistance in its defense.") (emphasis added)). This allegation necessarily encompasses assistance that Eclipse failed to provide to Underwriters either directly, or via their shared attorneys at Rose Walker. In other words, Underwriters seems to have made direct and offensive use of any communications between Eclipse, Underwriters, and/or Rose Walker, by taking the position that these communications were devoid of information or

guidance that would assist in Eclipse's defense.  (*Id.*)  In doing so, even under New Mexico's restrictive at-issue waiver law, Underwriters has likely waived the attorney-client privilege as to those communications.  *Gingrich*, 2007-NMCA-101, ¶ 15, 165 P.3d at 1140.

Moreover, the Court may in its discretion find that the scope of this waiver in fairness includes all communications Eclipse made to Underwriters and/or Rose Walker to defend Eclipse against any claims that might arise out of the two damaged planes.  Once a privilege has been waived, "the resulting scope of that waiver is a question addressed to the discretion of the district court."  *Gingrich*, 2007-NMCA-101, ¶ 21, 165 P.3d at 1141.  "The decision of whether the waiver applies only to the actual communication disclosed or to additional communications that substantively relate to it is a discretionary one, based upon the judge's assessment of what is fair under the circumstances."  *Id.*  As a matter of fundamental fairness, Underwriters' allegations that Eclipse provided it with no assistance would seem to implicate not only communications confirming these allegations, but also communications that contradict them because the communications could, in fact, assist in Eclipse's defense.

For all of the above reasons, the Court finds it likely that Underwriters has waived the attorney-client privilege as to responsive, withheld documents in the Rose Walker litigation file containing or describing guidance or factual information that Eclipse communicated to Underwriters and/or Rose Walker before its liquidation to defend against any claims that might arise out of the hail damage to the two planes at issue.  The Court will therefore order Underwriters to produce to the Court and Old Republic a supplemental privilege log detailing this category of documents, so that the Court may make a more informed determination regarding whether the attorney-client privilege protects each listed document and, if so, whether Underwriters has waived the privilege.

19

The Court will next consider Underwriters' assertion of the attorney work-product doctrine in connection with the Rose Walker litigation file.  Again, due to both the overbreadth of Old Republic's requests and the blanket nature of Underwriters' privilege log, the Court has insufficient information with which to assess whether the doctrine applies to each of the responsive documents Underwriters has withheld, whether its protections have been waived, and whether ordinary work product should nevertheless be produced pursuant to Rule 26(b)(3). Again, therefore, the Court will excuse Underwriters' production of an inadequate privilege log, limit the documents it will require Underwriters to include in a supplemental log to those likely to be discoverable, and order Underwriters to produce the supplemental log to the Court and Old Republic.

In determining which documents Underwriters should include in its supplemental log, the Court must again consider "at-issue" waiver, *i.e.*, whether and to what extent Underwriters may have waived the attorney work-product doctrine's protection by directly and offensively using otherwise protected documents in the Rose Walker litigation file.  *Anaya I*, 2007 WL 2219394, at *6.  The Court finds that, by directly alleging that Eclipse failed to provide it with any assistance in its defense, Underwriters has likely made direct and offensive use of any investigation Rose Walker conducted with Eclipse's assistance to defend Eclipse against claims that might arise from the two damaged planes.  (Doc. 23 at 15-18.)  The scope of this waiver would seem to include any factual information Eclipse provided to Rose Walker, and any factual information that Rose Walker gathered through any investigation conducted with Eclipse's assistance, to defend against claims that might arise from the two damaged planes.  *Gingrich*, 2007-NMCA-101, ¶ 21, 165 P.3d at 1141.  The Court will therefore require responsive, withheld documents falling into these categories to be detailed in Underwriters' supplemental privilege log.

20

The Court must also consider whether any other ordinary work product in the Rose Walker litigation file is likely to be discoverable under Rule 26(b)(3), although the work-product protection has not explicitly been waived.  Specifically, the Court must consider whether Old Republic has a substantial need for such work product, and whether it would be unduly burdensome for Old Republic to obtain its substantial equivalent from another source.  Fed. R. Civ. P. 26(b)(3).  As previously discussed, Old Republic is entitled to try to rebut the presumption of substantial prejudice arising from Eclipse's breach of its insurance policy with Underwriters, by showing that Underwriters currently possesses sufficient information and guidance to enable it to defend Eclipse in Civ. No. 12-1156 KG/GBW and/or D-202-CV-2010-05837.  *State Farm Mut. Auto. Ins. Co.*, 2005-NMSC-010 ¶ 7, 110 P.3d at 43; *Roberts Oil Co.*, 833 P.2d at 227.  Documents containing factual information that Rose Walker has gathered to defend Eclipse from claims that might arise from the two damaged planes would seem to be among the most direct and compelling categories of evidence Old Republic could use to make such a showing.

Again, however, the broad sweep of both Old Republic's requests and Underwriters' privilege log prevents the Court from assessing whether Old Republic has a substantial need for any particular document in this category and could not, without undue hardship, obtain its substantial equivalent from a source other than Rose Walker's litigation file.  Fed. R. Civ. P. 26(b)(3).  Thus, the Court will order Underwriters to include in its supplemental privilege log any responsive, withheld ordinary work product in the Rose Walker litigation file which contains factual information that Rose Walker gathered to defend Eclipse from claims that might arise from the two damaged planes.  This category is limited to the above-described ordinary work product generated in the anticipated or actual defense of Civ. No. 12-1156 KG/GBW and/or D-

202-CV-2010-05837, and not in the prosecution or defense of this action, Civ. No. 11-432 KBM/ACT, or Civ. No. 12-323 RB/RHS.

Finally, to the extent that Underwriters may have waived the attorney work-product doctrine's protection as to Rose Walker's opinion work product, which seems unlikely, the Court finds that the burden on Underwriters of producing such information greatly outweighs any legitimate benefit it would confer on Old Republic.  Fed. R. Civ. P. 26(b)(2)(C)(iii).  The Court will therefore sustain Underwriters' objections to Interrogatory No. 8 and Requests for Production Nos. 5 and 12 insofar as they seek the production of Rose Walker's opinion work product, which need not be produced or included in Underwriters' supplemental log.

In sum, the Court will compel Underwriters to produce to the Court and Old Republic a supplemental privilege log detailing withheld documents in the Rose Walker litigation file responsive to Old Republic's Interrogatory No. 8 and Requests for Production Nos. 5 and 12, containing or describing:  (1) guidance or factual information that Eclipse communicated to Underwriters and/or Rose Walker to defend against claims that might arise from the hail damage to the two planes at issue; (2) factual information that Rose Walker gathered to defend against such claims through any investigation undertaken with Eclipse's assistance; and, (3) factual information that Rose Walker gathered to defend against such claims through any other investigation.[10]  This supplemental log is to include the following information as to each listed document:  (a) the document's title, if any; (b) the type of document, *e.g.*, a letter, a memorandum, an e-mail message; (c) the date(s) on which the document was prepared; (d) the date(s) on which the document was transmitted to its intended recipients, if different; (e) the

---

[10] Again, the third category is limited to ordinary work product generated in the anticipated or actual defense of Civ. No. 12-1156 KG/GBW and/or D-202-CV-2010-05837.

identity of all person(s) who prepared the document, and each such person's employer and job title; (f) the identity of all person(s) who received the document, and each such person's employer and job title; (g) the purpose(s) for preparing the document; (h) the number of pages of the document; and, (*i*) the specific privilege(s) and protection(s) being asserted as to the document. *Kannady*, 292 F.R.D. at 645. The Court will use the supplemental log to determine what documents, if any, it will order Underwriters to produce either directly to Old Republic or to the Court for *in camera* review, based on an informed assessment of whether the attorney-client privilege and/or the attorney work-product doctrine apply, whether such protections have been waived, and whether Old Republic is entitled to the production of ordinary work product under Rule 26(b)(3).

   **5.     *Old Republic's Interrogatories Nos. 11 and 12 and Request for Production No. 10***:  In these requests, Old Republic seeks information regarding Underwriters' "policies and trainings for its claims process regarding property damage claims," and its "efforts to comply with the policies" with respect to the two damaged planes at issue.  (Doc. 46-1 at 6-7, 13-14.) Underwriters objected that the requests are overbroad, overburdensome, harassing, and seek irrelevant information.  (*Id.*)  The Court finds that Underwriters' formal, written policies and procedures for its property damage claims process are relevant to whether it acted in good faith in investigating Old Republic's claim, and will compel Underwriters to fully respond to that portion of these requests, but only as to those policies and procedures in effect in 2008, when Underwriters generated its claims report regarding the two damaged planes.   (Doc. 56.) However, the Court further finds that requiring Underwriters to produce responsive information about all of its "trainings" regarding property damage claims, without any limitation as to who received the training, for what purpose, or when, would impose a considerable burden on

Underwriters that outweighs any slight additive relevance it might possess, and the Court will deny the motion as to this portion of the requests.  Fed. R. Civ. P. 26(b)(2)(C)(iii).

The Court further finds that Old Republic's Interrogatory No. 12, which seeks information regarding Underwriters' "efforts to comply with the policies" with respect to the two damaged planes, is substantially redundant of Request for Production No. 14, which seeks Underwriters' claims file regarding the planes, because Underwriters' claims file would presumably document its efforts to comply with its policies.[11]  As such, the Court's analysis and ruling set forth in Section 7, *infra*, will apply to that portion of these requests.  Finally, the Court notes that, for the first time in its response to Old Republic's original motion to compel, Underwriters objected that these requests seek confidential business information.  (Doc. 36 at 11.)  In its response, Underwriters failed to cite to legal authority supporting this objection, and has waived it by failing to make it in a timely fashion.  Fed. R. Civ. P. 33(b)(4); *Starlight Int'l*, 181 F.R.D. at 496.

6.     ***Old Republic's Request for Production No. 1***:  In this request, Old Republic seeks "all documentation" regarding the two damaged planes at issue.  (Doc. 46-1 at 10.) Underwriters objected that the request seeks irrelevant information, is overbroad, and would impose an undue burden to the extent that it seeks Eclipse's records because Eclipse "is in bankruptcy and records are not readily available to Plaintiff."[12]  (*Id.* at 10-11.)   The Court finds this request to be substantially redundant of Old Republic's Request for Production No. 14,

---

[11] To the extent that Old Republic seeks information regarding Underwriters' "efforts to comply with the policies" beyond what is in the claims file, the Court finds that Interrogatory No. 12 is overbroad and overburdensome, and sustains Underwriters' objections to this effect.

[12] Underwriters' objections, made in January 2014, suggest that it still had some kind of access to Eclipse's records regarding the damaged planes at the beginning of last year, and was thus obliged to make reasonable attempts to preserve that access.

which seeks Underwriters' claims file regarding the two damaged planes.   The Court will therefore overrule Underwriters' objections and compel it to produce responsive documents in its possession, custody, or control to the extent and in the manner required by Section 7, below, as it pertains to Request for Production No. 14.

       **7.**     **_Old Republic's Requests for Production Nos. 13 and 14_**:   In these requests, Old Republic seeks "all documents" that Underwriters' attorneys "generated or received" regarding the two damaged planes at issue or the lawsuits arising from the damage to them, as well as Underwriters' "claims file" regarding the damaged planes.   (Doc. 46-1 at 15.)   Underwriters objected that the requests are overbroad, overburdensome, and seek information that is irrelevant and protected by the attorney-client privilege and the attorney work-product doctrine.   (*Id.*)   The Court finds that Request for Production No. 13, in which Old Republic seeks all documents generated or received by Underwriters' attorneys, is so overbroad and overburdensome that the Court can neither compel Underwriters to respond to it as written, nor reasonably narrow it in scope.   The Court will therefore sustain Underwriters' objections and deny Old Republic's renewed motion to compel Underwriters to respond to this request.

       Regarding Request for Production No. 14, by which Old Republic seeks Underwriters' "claims file," Underwriters' counsel has represented, as an officer of this Court, that Underwriters has produced "anything prepared by Underwriters or in the possession of Underwriters – including photographs and other written documentation," most lately on February 2, 2015.   (Doc. 63 at 8.)   According to Underwriters, the only exception is UNDERWRITERS000329, *i.e.*, the first item listed in Underwriters' privilege log.   (*Id.*) According to Underwriters, this item is an internal communication Underwriters created after it received a "demand letter" from Old Republic, "in preparation to hire counsel."   (*Id.*)   "The

25

attached claims report refers to all hail claims associated with the storm in which the planes at issue were damaged." (*Id.*) Underwriters argued that this document was "created in reasonable anticipation of litigation," but also offered to produce the document for *in camera* review. (*Id.*)

The fact that a defendant anticipates litigation resulting from an incident does not automatically insulate investigative reports and the like from discovery as work product. *Wikel v. Wal-Mart Stores, Inc.*, 197 F.R.D. 493, 495-96 (N.D. Okla. 2000).

> [E]ven if litigation is imminent, there is no work product immunity for documents prepared in the ordinary course of business rather than for litigation purposes. . . . As for "anticipation of litigation," court have made clear that, because litigation can be anticipated at the time almost any incident occurs, a "substantial and significant threat of litigation" is required before a discovery opponent's anticipation will be considered a reasonable and justifiable motivation for production of a document. Demonstration of a substantial and significant threat requires a showing of objective facts establishing an identifiable resolve to litigate. The fact that litigation ensues or that a party retains an attorney, initiates an investigation, or engages in negotiations over a claim, is not dispositive on the issue of whether litigation was anticipated.

*Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs.*, 2007 WL 1306593 at *6 (D.N.M.) (citing *Allen v. Chicago Transit Auth.*, 198 F.R.D. 495, 500 (N.D. Ill. 2001)).

Underwriters' claim of work product privilege as to UNDERWRITERS000329 depends on whether this item was prepared in anticipation of litigation, *i.e.*, whether there was a substantial and perhaps imminent probability of litigation over Old Republic's claim when it was prepared. *Hurtado v. Passmore & Sons, L.L.C.*, 2011 WL 2533698 at *4 (D. Colo. 2011). In the insurance context, this means that Underwriters must be able to show a "definite shift" from creating documents in the ordinary course of business to creating them in anticipation of litigation. *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 659 (D. Kan. 2007). That is, the "primary motivating purpose" behind a document must be to assist in anticipated litigation. *Lindley v. Life Investors Ins. Co. of Am.*, 267 F.R.D. 382, 400 (N.D. Okla. 2010), *aff'd in*

*pertinent part*, 2010 WL 1741407 (N.D. Okla. 2010).  Documents prepared by a claims adjustor in the ordinary course of business are not protected.  *Western Nat'l Bank of Denver v. Employers Ins. of Wausau*, 109 F.R.D. 55, 57 (D. Colo. 1985).  Underwriters, as the party resisting discovery, has the burden of establishing that UNDERWRITERS000329 was prepared in anticipation of litigation.  *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984).

At present, Underwriters has offered only argument to meet its burden.  (Doc. 63 at 8.) According to Underwriters' privilege log, the withheld document was created in November 2008, well before any litigation was filed against Eclipse, making the possibility that it was prepared in the ordinary course of the insurance business as likely as the possibility that it was prepared in response to a "substantial and significant threat of litigation."  *Trujillo*, 2007 WL 1306593 at *6.  In short, the Court cannot at this time determine whether the attorney-work product doctrine even protects UNDERWRITERS000329, much less whether the protection has been waived, or whether Old Republic has a substantial need for the item and cannot without undue hardship obtain its equivalent by other means.   The Court will therefore order Underwriters to produce UNDERWRITERS000329 to the Court for *in camera* inspection, as it has offered to do.[13]

**8.**     ***Award of Expenses under Federal Rule of Civil Procedure 37***:  The Court will not award expenses to either party as a result of Old Republic's Renewed Motion to Compel. Pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), if a party's motion to compel is granted or discovery is provided only after the motion is filed, the Court must generally require the

---

[13] Because Underwriters is producing the item to the Court only, and because other claims arising out of the hail storm that damaged the two planes at issue may be relevant, *see* Section 3, *supra*, Underwriters will be required to produce UNDERWRITERS000329 without redaction.

opposing party and/or its counsel to pay the movant's reasonable expenses incurred in making the motion. Fed. R. Civ. P. 37(a)(5)(A). However, the Court must not require payment of such expenses if, *inter alia*, "the opposing party's nondisclosure, response, or objection was substantially justified," or "other circumstances make an award of expenses unjust." Id. Similarly, Rule 37(a)(5)(B) provides that if a motion to compel is denied, the Court must generally award expenses to the party opposing the motion, but again, not if "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). Finally, Rule 37(a)(5)(C) provides that "[i]f the motion is granted in part and denied in part, the court…may…apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C) (emphasis added).

In this case, portions of Old Republic's renewed motion to compel have been granted, and portions have been denied. Each party has taken some positions that are substantially justified, and some that are without merit. Underwriters' reliance on the attorney-client privilege and the attorney work-product doctrine, and Old Republic's waiver argument, present complex and significant legal issues, which were appropriately submitted to the Court for resolution. In these circumstances, an award of expenses to either party would be unjust and inappropriate under Rule 37(a)(5)(A) and (B), and the Court declines to exercise its discretion under Rule 37(a)(5)(C) to apportion expenses between the parties.

### *Conclusion*

IT IS THEREFORE ORDERED as follows:

(1)     The Court GRANTS Old Republic's renewed motion to compel Underwriters to answer Interrogatories Nos. 1 and 4, and hereby orders Underwriters to fully answer these interrogatories.

(2)     The Court GRANTS IN PART and DENIES IN PART Old Republic's renewed motion to compel Underwriters to respond to Interrogatory No. 6 and Request for Production No. 3.   Underwriters shall respond to these requests, but only with responsive information and documents in its possession, custody, or control concerning other claims involving property damaged at Eclipse's facility during the July 2008 hailstorm that also damaged the two planes at issue in this case.

(3)     The Court GRANTS IN PART and DENIES IN PART Old Republic's renewed motion to compel Underwriters to respond to Old Republic's Interrogatory No. 8 and Requests for Production Nos. 1, 5, and 12.  In response to these requests, Underwriters shall produce to the Court and Old Republic a supplemental privilege log detailing all withheld, responsive documents in the Rose Walker litigation file containing or describing:  (1) guidance or factual information that Eclipse communicated to Underwriters and/or Rose Walker to defend against claims that might arise from the hail damage to the two planes at issue; (2) factual information that Rose Walker gathered to defend against such claims through any investigation undertaken with Eclipse's assistance; and, (3) factual information that Rose Walker gathered to defend against such claims through any other investigation.  The third category is limited to ordinary work product generated in the anticipated or actual defense of Civ. No. 12-1156 KG/GBW and/or D-202-CV-2010-05837.  The supplemental privilege log shall include the following information as to each listed document:  (a) the document's title, if any; (b) the type of document; (c) the date(s) on which the document was prepared; (d) the date(s) on which the document was transmitted to its intended recipients, if different; (e) the identity of all person(s) who prepared the document, and each such person's employer and job title; (f) the identity of all person(s) who received the document, and each such person's employer and job title; (g) the

purpose(s) for preparing the document; (h) the number of pages of the document; and, (*i*) the specific privilege(s) and protection(s) being asserted as to the document.   No opinion work product need be produced or included in the supplemental privilege log.

(4)     The Court GRANTS IN PART and DENIES IN PART Old Republic's renewed motion to compel Underwriters to respond to Interrogatories Nos. 11 and 12 and Requests for Production Nos. 10 and 14.   Underwriters shall produce responsive documents regarding its formal, written policies and procedures for property damage claims in effect in 2008, but not regarding its training.   Regarding its claims file and its efforts to comply with its policies, Underwriters is ordered to produce UNDERWRITERS000329 to the Court for *in camera* review.

(5)     The Court DENIES Old Republic's renewed motion to compel Underwriters to respond to Request for Production No. 13.

(6)     Underwriters shall produce the documents, information, and supplemental privilege log described above **within twenty-one (21) calendar days** of entry of this Order.

(7)     The Court declines to make an award of fees and costs incurred in association with this motion to any party.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE